UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| DERRICK T MOORE | CIVIL ACTION NO. 23-1417 |
| VERSUS | JUDGE EDWARDS |
| A T & T | MAG. JUDGE HORNSBY |

**MEMORANDUM RULING & ORDER**

This is an employment discrimination action brought by Plaintiff Derrick Moore ("Plaintiff") against Defendant AT&T Services Inc. ("Defendant" or "AT&T") pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*. Plaintiff alleges that Defendant discriminated against him on the basis of race and sex by firing him after he received poor reviews at a training course required for his job.

The Plaintiff moved for summary judgment which the Defendant has opposed.[1] Defendant has also moved for summary judgment, which is opposed by Plaintiff.[2] After careful consideration of the Motions, the record, and the applicable law, the Defendant's Motion is **GRANTED**, and Plaintiff's Motion is **DENIED**. Defendant is granted summary judgment as a matter of law. Accordingly, all claims by Plaintiff are **DISMISSED** with prejudice.

---

[1] R. Docs. 17 and 21.
[2] R. Docs. 37, 39, 41, and 42.

## I. BACKGROUND

Plaintiff is an African-American man and was employed by AT&T as a Wire Technician for approximately seven weeks before his termination on April 17, 2023.[3] The Wire Tech position required Plaintiff to attend an in-person training in Mississippi for a few weeks.[4] While Plaintiff was at the training, one of his trainers, Paul Bilsky, sent a report to Plaintiff's immediate supervisor, Ramone Pipkins, that stated the following:

> Derrick was not tuned into the class. It was almost like a total disregaurd [sic] for anything being taught. On his practicals he had to be taught over and over again because he did not pay attention in class. I talked with Derrick a few times about his performance and advised him that this behaviour [sic] was not acceptable.
>
> Derrick has major issues with signal flow and the basic installation process. He has to be constantly coached either by me or by a fellow tech for him to complete his assignments. …
>
> Derrick has shown a total lack of respect towards training, he would wander off and sleep in class or take phone calls while he was supposed to be working on his installation of his circuit. When asked direct questions he would try to talk his way out of being caught not paying attention. [W]hen confronted about his lack of knowledge on anything he would shurg [sic] it off as if he didint [sic] care.[5]

Part of the training required the trainers to evaluate the trainees and assign ratings that ranged from "Very Good" (the best rating) to "Serious Concerns" (the worst rating).[6] Trainer Bilsky reported that there were "Serious Concerns" with Moore's performance in the areas of Technical Proficiency.[7] The other seven trainees

---

[3] R. Doc. 37-5 at 1, 3.
[4] R. Doc. 37-4 at 1.
[5] R. Doc. 37-2 at 5.
[6] R. Doc. 37-2.
[7] R. Doc. 37-2 at 5.

in the class received a rating of "Satisfactory" in the area of Technical Proficiency.[8] Bilsky also rated Plaintiff's performance in the area of Training Engagement with "Serious Concerns," a rating lower than the evaluations given to any of the other seven trainees.[9] In the area of Compliance, Bilsky rated Plaintiff's performance as "Poor," while the other trainees received ratings of "Satisfactory" or "Very Good."[10]

AT&T terminated Plaintiff's employment effective April 17, 2023, with stated reasons being Plaintiff's poor performance during the training period.[11] The termination decision was made by Plaintiff's immediate supervisor, Ramone Pipkins, and his next-level supervisor, Associate Director Nika Echols.[12] Both Pipkins and Echols are African-American, like Plaintiff.[13] Plaintiff testified that Pipkins never said or did anything discriminatory and did not treat him badly because of his race.[14] He testified that he was not familiar with Echols and does not contend that she treated him differently from other employees.[15]

Plaintiff was the only trainee in Bilsky's class who received a "Serious Concerns" rating.[16] There were other African-American trainees in the same class, and each of them passed.[17] Bilsky, who is White, did not participate in the decision to terminate Plaintiff's employment, did not work in Plaintiff's department, and was

---

[8] R. Doc. 37-2 at 2, 4–6.
[9] R. Doc. 37-2.
[10] *Id.*
[11] R. Doc. 37-2 at 2 ("Because of the serious concerns and unsatisfactory performance by Moore in training class, AT&T terminated his employment effective April 17, 2023").
[12] 37-2 at 1–2.
[13] R. Doc. 37-2 at 1.
[14] R. Doc. 37-1 at 9.
[15] R. Doc. 37-1 at 7.
[16] R. Doc. 37-2.
[17] R. Doc. 37-4 at 3; R. Doc. 37-2 at 3.

not part of Plaintiff's supervisory chain.[18] Plaintiff met Bilsky for the first time during the training class and testified that Bilsky never made any racially derogatory or discriminatory statements.[19] Plaintiff acknowledged that some parts of the training "slipped [his] mind" and that he "didn't pick up as fast as everybody else."[20]

After his termination, Plaintiff filed a grievance through his labor union, the Communications Workers of America.[21] The grievance was settled on terms sustaining Plaintiff's termination, but with AT&T agreeing—without admitting fault or wrongdoing—to change his human resources file to reflect that he was eligible for rehire consideration.[22] AT&T maintains no record or evidence that Bilsky acted with discriminatory animus or submitted any false reports concerning Plaintiff's performance.[23]

Plaintiff's claim of gender discrimination is based on his "assumption that maybe if [he] were a different gender, things would have been different."[24] There were no female trainees in Plaintiff's class, and Plaintiff admitted he could not identify any female employees who were treated more favorably under similar circumstances.[25]

## II. LEGAL STANDARD

Summary judgment is appropriate when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[18] R. Doc. 37-2 at 3.
[19] R. Doc. 37-1 at 13–14.
[20] *Id.* at 13.
[21] R. Doc. 37-1 at 33–35.
[22] *Id.*
[23] R. Doc. 37-4 at 4.
[24] R. Doc. 37-1 at 18.
[25] *Id.*

matter of law."[26] "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[27] "A dispute is genuine if the summary judgment evidence is such that a reasonable jury could return a verdict for the [non-movant]."[28] In evaluating a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party."[29]

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."[30] "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim."[31] Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate.[32]

Because he is not represented by counsel, Defendant's pleadings are not held to the same stringent standard that is expected of pleadings drafted by licensed

---

[26] Fed. R. Civ. P. 56(a).
[27] *Hyatt v. Thomas,* 843 F.3d 172, 177 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[28] *Id.* (internal quotations omitted).
[29] *Total E&P USA Inc. v. Kerr-McGee Oil & Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (internal citations omitted).
[30] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247).
[31] *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 263 (5th Cir. 2002).
[32] *Id.*

lawyers.[33] The Court instead grants a pro se litigant grace by liberally construing his pleadings.[34]

### III. LAW & ANALYSIS

To establish a prima facie claim for race or sex discrimination under Title VII, a plaintiff must show that he: (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.[35]

Here, it is undisputed that Plaintiff can satisfy the first three elements of his prima facie case.[36] The dispute centers on the fourth element—whether Plaintiff was treated less favorably than similarly situated employees outside his protected group. Defendant contends that Plaintiff has failed to identify any non-African-American or female coworkers who were treated more favorably under substantially similar circumstances.[37] Defendant asserts that none of the other seven employees in Plaintiff's training class were reported to have "wander[ed] off and sleep[t]" during training, as was documented in Plaintiff's case.[38] Unlike Plaintiff, no other trainee received a "Serious Concerns" rating in the area of Training Engagement or Technical

---

[33] *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).
[34] *Id.*
[35] *See Ernest v. Methodist Medical Hospital Sys.*, 1 F.4th 333, 339 (5th Cir. 2021) (citing *Story v. Gibson ex rel. Dep't of Veteran Affs.*, 896 F.3d 693, 698 (5th Cir. 2018)).
[36] R. Doc. 37-4 at 6.
[37] *Id.*
[38] *Id.*

Proficiency; instead, they were rated as "Satisfactory" in both categories.[39] Similarly, while Moore received a "Poor" rating in the area of Compliance, the other trainees were rated either "Satisfactory" or "Very Good."[40]

To satisfy the "similarly situated" prong, a plaintiff must show that he was treated less favorably than a comparator outside his protected group under nearly identical circumstances.[41] "A variety of factors are considered when determining whether a comparator is similarly situated, including job responsibility, experience, and qualifications."[42] The Fifth Circuit requires an employee to show that the comparator's conduct is "nearly identical," not strictly identical[43] which requires that the " employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories."[44] Critically, the plaintiff's conduct that prompted the adverse employment action must have been "nearly identical" to that of the comparator.[45] If any differences in conduct account for the disparate treatment, then the individuals are not similarly situated for purposes of a discrimination analysis.[46]

Plaintiff has not identified any comparator who satisfies this standard. He was the only trainee in his class to receive "Serious Concerns" ratings in both Training

---

[39] *Id.*
[40] *Id.* at 6–7.
[41] *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259–60 (5th Cir. 2009) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).
[42] *Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 185 (5th Cir. 2018).
[43] *Lee*, 574 F.3d at 260.
[44] *Id.* at 259–60.
[45] *Id.*
[46] *Id.*

Engagement and Technical Proficiency and the only one rated "Poor" in Compliance. The remaining trainees—both Black and White—received uniformly higher performance ratings and were not reported to have disengaged from training by sleeping in class, wandering off, or taking personal calls, as Plaintiff was. Plaintiff also admitted that portions of the training "slipped [his] mind" and that he struggled to keep up.

Moreover, Plaintiff has not pointed to any trainee, regardless of race or gender, who engaged in similar conduct yet was retained. There were no female trainees in the class, and Plaintiff cannot identify a single male or non-Black trainee who performed similarly poorly and was treated more favorably. Any difference in treatment is accounted for by differences in performance. As such, Plaintiff's conduct was not "nearly identical" to that of any other trainee.

Accordingly, Plaintiff has failed to carry his burden of identifying a valid comparator under the Fifth Circuit's "nearly identical circumstances" test and thus cannot establish a prima facie case of disparate treatment.

### IV.    CONCLUSION

For the reasons set forth above, the Court finds that Defendant is entitled to summary judgment on all claims. Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (R. Doc. 17) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (R. Doc. 37) is **GRANTED**.

**IT IS FURTHER ORDERED** that all claims against Defendant AT&T Services Inc. are **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** this 20th day of May, 2025.

_____
**JERRY EDWARDS, JR.**
**UNITED STATES DISTRICT JUDGE**